UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY BURTON, | No. 2:23-cv-03034 KJM AC (PS) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| LAILA DARBY, et al., | |
| Defendants. | |

    Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Plaintiff is suing the Sacramento Housing and Redevelopment Agency ("SHRA"), Laila Darby (SHRA director) and Ibra Henley (SHRA Hearing Coordinator) for violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973.  ECF No. 1 at 3-4.  Defendant SHRA moved to dismiss.  ECF No. 13.  Plaintiff filed an opposition (ECF No. 14) and a supplemental opposition (ECF No. 16).  Defendant SHRA filed a reply.  ECF No. 18.  Plaintiff filed an unauthorized surreply.  ECF No. 19.  A hearing was set for June 6, 2024, at 10:00 a.m. in Courtroom 26.  ECF No. 13.  Counsel Graham Matthew Cridland appeared on behalf of defendant SHRA, but plaintiff failed to appear and no argument was held in his absence.  The matter was submitted on the papers.  Id.  For the reasons that follow, the undersigned recommends that the motion to dismiss be GRANTED in part and DENIED in part.

**I. Background**

A. <u>The Complaint</u>

Stanley Burton, proceeding in pro se, filed a complaint on December 28, 2023, against SHRA and two of its employees. ECF No. 1. Plaintiff alleges that on June 4, 2021, and on April 13, 2022, he requested an extra bedroom to be added to his existing housing voucher because of his sleep apnea and degenerative disc disease, asserting that he needs a separate space for his sleep apnea machine apparatus. ECF No. 1 at 5. Plaintiff alleges he was not afforded the opportunity to participate in SHRA's housing programs and was denied equal access under Section 504 of the Rehabilitation Act of 1973 ("RA"), the Americans with Disabilities Act ("ADA"), and Title VI of the Civil Rights Act of 1965. <u>Id.</u> Plaintiff asserts further that he was denied a reasonable accommodation for his disability, and that SHRA violated their own auxiliary policy under 24 CFR 5.611(c). Plaintiff alleges he has medical notes provided by two different healthcare providers supporting the need for a second bedroom. <u>Id.</u> Plaintiff asks for $65,000 in punitive damages for mental anguish, loss of sleep, and anxiety. <u>Id.</u> at 6. The complaint does not state any factual allegations against the individual defendants. <u>Id.</u> at 1-6.

B. <u>The Motion to Dismiss</u>

Defendant SHRA moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on two grounds: (1) the complaint exclusively seeks punitive damages and punitive damages are not available under the ADA and RA; and (2) the complaint fails to state a claim upon which relief can be granted because plaintiff does not allege causation or cognizable harm from the agency action he challenges. ECF No. 13-1. Defendant's argument on the latter issue includes the conclusory assertion that plaintiff "has no standing." <u>Id.</u> at 7:9. Although SHRA provides no discussion or analysis of Article III standing requirements, the court must address this threshold issue at the outset because it goes to the court's jurisdiction. <u>Jones v. L.A. Cent. Plaza LLC</u>, 74 F.4th 1053, 1058 (9th Cir. 2023) ("a jurisdictional issue such as Article III standing may be raised sua sponte by the court at any time."); <u>Dittman v. California</u>, 191 F.3d 1020, 1025 (9th Cir. 1999) (federal courts have an independent obligation to address jurisdictional questions sua sponte).

////

## II. Article Three Standing

### A. Legal Standards

"Federal courts are courts of limited jurisdiction, possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing.  Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)).  "[T]he irreducible constitutional minimum of standing contains three elements," which the party invoking jurisdiction must prove.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  First, plaintiff must establish that he personally suffered an "injury in fact," meaning an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (citations, internal quotation marks, and footnote omitted).  Second, the plaintiff must show that his injury is reasonably traceable to the alleged conduct of the defendant.  Id. at 560-61.  Finally, the plaintiff must show that a decision in his favor would reasonably redress his injury.  Id. at 561.

### B. Arguments of the Parties

SHRA argues that plaintiff lacks standing because he "sues not to protect or vindicate his own right, but to establish a hypothetical right that he might use in the future." ECF No. 13-1 at 7. Defendant points to Chapter 9 of the 2021 Administrative Plan, of which the court takes judicial notice[1] at SHRA's request, which states: "After families are issued a voucher, they may search for a unit… The family must find an eligible unit under the program rules, with an owner

---

[1] Defense counsel represents that the Housing Administrative Plan for 2021 is a 306-page document that is publicly available on SHRA's website. Under Federal Rule of Evidence 201(b), a judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The court grants the request as courts may take judicial notice of the records of state agencies and other undisputed matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (explaining that a court may judicially notice matters of public record unless the matter is a fact subject to reasonable dispute).

3

who is willing to enter into a Housing Assistance Payment (HAP) contract with the PHA…" Id. Defendant then argues: "Mr. Burton does not allege that he has done this, or indeed that he has ever received a subsidy or become eligible for a subsidy in any amount." Id. In short, defendant takes the position that only a Section 8 tenant with a current lease has standing to challenge the denial of an accommodation in the form of an expanded voucher, but that a voucher holder without a lease does not.

Plaintiff responds in opposition:

> [T]his is true I have a housing choice voucher. But the defendants stated that I was not using the voucher my question to the defendants is how can I use the voucher when I wasn't given the opportunity to have the requested extra two bedroom added to my already existing HCV housing voucher for an extra bedroom because what's listed on our voucher is a one bedroom and even if we were able to find a two bedroom we wouldn't be able to rent it because what's stated on the voucher is a one bedroom.

ECF No. 15 at 2. Plaintiff emphasizes that he is not in a position to "lease up" until he has a voucher sufficient to provide for a two-bedroom unit. Id.

In reply, defendant asserts that plaintiff's understanding is incorrect: "Nothing about the HCV program limits a voucher to use on a particular size of unit." See ECF No. 13-2 at 8 (Exhibit 2 to Declaration of Graham M. Cridland) ("Eligible types of housing" (permitting various types and structures of housing arrangements not limited by bedroom size)).

C. Background Related to Section 8 and the Housing Choice Voucher Program

The Ninth Circuit has provided this general overview of the Section 8 Housing Choice Voucher Program:

> In 1974, Congress created the Section 8 housing program in order to "aid[] low-income families in obtaining a decent place to live" and "promot[e] economically mixed housing." Housing and Community Development Act of 1974, Pub. L. 93-383 § 201(a), 88 Stat. 633, 622-66 (1974) (codified as amended at 42 U.S.C. § 1437f). For over four decades, the program has provided rental assistance to low-income, elderly, and disabled families. See generally Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1152 (9th Cir. 2011).
>
> The majority of federal housing assistance takes place through the Housing Choice Voucher Program, which subsidizes the cost of renting privately-owned housing units. 42 U.S.C. § 1437f(o). The

4

> Voucher Program is funded and regulated by the federal Department of Housing and Urban Development, and it is administered at the local level through "public housing agencies." 24 C.F.R. § 982.1(a).
>
> The public housing agencies determine whether individuals are eligible to participate in the program. 24 C.F.R. § 982.201. When an individual is approved, the public housing agency gives that person a voucher which entitles him to search for qualifying privately-owned housing. 24 C.F.R. § 982.302. When a voucher-possessing individual finds a qualifying unit, the unit owner and public housing agency will negotiate and enter into a housing assistance payment contract, which inter alia specifies the maximum monthly rent that the unit owner may charge. 42 U.S.C. § 1437f(c). After that contract has been formed, the public housing agency will make subsidy payments to the unit owner on behalf of the tenant. [Footnote omitted.]
>
> An extensive set of statutory provisions and regulations governs the calculation of the subsidy that must be paid on behalf of each tenant. See 42 U.S.C. § 1437f(o); 24 C.F.R. § 982.501 et seq. To begin with, the Department of Housing and Urban Development must set the fair market rent for established geographic areas across the United States. 24 C.F.R. § 982.503(a)(1). The public housing agency must use this fair market rent to create a local voucher "payment standard" for each of the areas in its jurisdiction. 24 C.F.R. § 982.503(b)(1)(i). A payment standard is the maximum subsidy payment that the housing agency will provide for each type of apartment in the area. Id. It must generally be set between 90 percent and 110 percent of the fair market rent for the area. 24 C.F.R. § 982.503(b)(1)(i). [Footnote omitted.]
>
> All tenants are responsible for contributing 30% of their monthly adjusted income or 10% of their gross monthly income, whichever is greater. 42 U.S.C. § 1437f(c)(2)(A). [Footnote omitted.] Tenants whose rental units cost more than the payment standard have a higher expected contribution. Such tenants must also pay any amount by which their rent exceeds the established payment standard. 42 U.S.C. § 1437f(o)(2)(B). [Footnote omitted.] In either case, the subsidy covers the balance of the rent.

Nozzi v. Housing Authority, 806 F.3d 1178, 1184-1185 (9th Cir. 2015).

In sum, "[a Housing Choice] voucher is portable. The tenant may choose to live in any property if the landlord agrees to accept the voucher and comply with the applicable regulations. The government subsidy is limited to the difference between the amount the family is required to contribute and the payment standard established by [local public housing authorities] based on fair market rents for the area." Barrientos v. 1801-1825 Morton LLC, 583 F.3d 1197, 1202 (9th Cir. 2009); see also Huynh v. Harasz, 2016 U.S. Dist. LEXIS 63678, *3 (N.D. Cal., May 12, 2016) (describing program).

24 C.F.R. § 982.402(a) provides as follows:

> (1) The PHA [Public Housing Agency] must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions.
>
> (2) For each family, the PHA determines the appropriate number of bedrooms under the PHA subsidy standards (family unit size).
>
> (3) The family unit size number is entered on the voucher issued to the family. The PHA issues the family a voucher for the family unit size when a family is selected for participation in the program.

Although a family may choose to live in a unit with more bedrooms than the family is allocated under the subsidy standard, the subsidy standard establishes the maximum amount of housing assistance that a voucher holder may receive. Huynh, 2016 U.S. Dist. LEXIS 63678, *4.

D. Discussion

Liberally construing the pro se complaint, plaintiff alleges that his rights as a disabled Housing Choice Voucher recipient have been violated by SHRA's determination of his authorized family unit size, which in turn dictates the amount of the subsidy to which he is entitled. While defendant is correct that plaintiff is theoretically free to use his existing voucher toward any size unit, the fact remains that the amount of the subsidy currently available to him for use is that which has been determined according to the local payment standards for a one-bedroom unit. See Huynh, 2016 U.S. Dist. LEXIS 63678, *5 ("Family size and composition determine the number of bedrooms that a voucher holder is allocated, which in turn determines the voucher holder's subsidy standard."). Without the ability to pay the difference between a subsidy based on a one-bedroom unit and the market rate for a two-bedroom unit, which is clear from the face of the complaint, plaintiff's voucher is useless to him. Plaintiff is not contending that his voucher can only be used toward a one-bedroom unit under program rules, but that his existing voucher is inadequate to permit him and his wife to secure a two-bedroom unit as needed to accommodate his disability. These allegations demonstrate a concrete obstacle to appropriate housing. The undersigned finds nothing speculative about this alleged injury.

The court is unpersuaded by defendant's argument that without a current lease or pending lease application, plaintiff has no subsidy and therefore no non-speculative injury. See ECF No.

13-1 at 6-7. The complaint alleges that plaintiff has an existing Section 8 voucher. ECF No. 1 at 5. As explained above, a voucher represents eligibility for a subsidy in a specific amount. Once a lease is secured, that subsidy is provided to the landlord and the tenant receives the benefit. But the voucher itself amounts to an entitlement to the subsidy, contingent on the identification of a landlord willing to accept it. See 24 C.F.R. § 982.302. Defendant's characterization of plaintiff as lacking eligibility for a subsidy is therefore misleading. Defendant itself found plaintiff eligible for a subsidy, as reflected by the voucher issued to him. See 24 C.F.R. §§ 982.210, 982.302. Because he has been issued a voucher but denied an adjustment that would permit him to secure a unit consistent with his needs, he has alleged an injury to a legally protected interest that is concrete and actual or imminent, not hypothetical.

Article III does not require plaintiff to go through the motions of applying for a two-bedroom rental unit that he cannot afford with a one-bedroom voucher. Nor does it require him to move into a subsidized one-bedroom unit unsuitable for his disability. His standing arises from the denial of access to the subsidized two-bedroom unit to which he alleges he is entitled. That injury is independent of his current housing status.

### III. Sufficiency of the Complaint

A. Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed.

2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Plaintiff's Request for Punitive Damages

Defendant contends that plaintiff's complaint must be dismissed because the only requested relief is punitive damages, which are unavailable as a matter of law against a state government entity, and are independently unavailable as a matter of law under the ADA and RA.

8

ECF No. 13-1 at 4. In his opposition, plaintiff asserts that California law allows a plaintiff to recover punitive damages where their injuries were caused by malice, oppression, fraud, or intentional harm. ECF No. 15 at 5. Plaintiff also states that available remedies for "breach of duty under contract or [violation of] some right" include compensatory damages based on the harmed party's actual losses or punitive damages intended to punish the wrongdoer. Id.

Defendant is correct that punitive damages are not available under the statutes which provide plaintiff's cause(s) of action. Barnes v. Gorman, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."). Plaintiff's arguments in opposition are unavailing because this is not a tort or breach of contract case, and general remedies principles cannot override the U.S. Supreme Court's determination that specific statutes do not support punitive damages. The complaint identifies two statutory grounds for relief—the ADA and RA[2]—neither of which supports an award of punitive damages. Even if the reference in plaintiff's factual statement to Title VI of the 1964 Civil Rights Act[3] is construed as asserting a third putative cause of action, that statute also fails to provide for punitive damages. See Barnes, 536 U.S. at 189. The only relief plaintiff seeks in his complaint is "punitive damages in the amount of $65,000 for mental anguish, loss of sleep, anxiety[.]" ECF No. 1 at 6. That relief is unavailable as a matter of law.

Moreover, even if plaintiff were asserting additional claims under which punitive damages might be otherwise available, the SHRA is a public entity which is shielded from liability for punitive damages under the California Government Claims Act. Cal. Gov. Code, § 818 ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."). This limitation applies with full force in federal court. See Westlands Water Dist. v. Amoco Chem. Co., 953 F.2d 1109, 1113 (9th Cir. 1992) ("California Government Code § 818 bars any award of punitive damages against a public

---

[2] ECF No. 1 at 4.
[3] ECF No. 1 at 5.

entity."); Walker v. McCloud Community Services Dist., No. 2:16-cv-00061 WBS CMK, 2016 U.S. Dist. LEXIS 32701, 2016 WL 951635, at *2 (E.D. Cal. Mar. 14, 2016) (dismissing without leave to amend the plaintiff's request for punitive damages against the public entity defendant).

While it is clear from the foregoing that plaintiff's request for punitive damages must be dismissed from the complaint, and that amendment regarding punitive damages would be futile, it does not follow that plaintiff's causes of action fail or that the complaint as a whole should be dismissed. Should plaintiff ultimately establish defendant's liability, he would be entitled to compensatory damages. See Barnes, 536 U.S. at 189. The pro se complaint's request for relief specifically seeks damages for plaintiff's own mental anguish, loss of sleep, and anxiety. ECF No. 1 at 6. This language reasonably supports an inference that plaintiff seeks compensation for injuries that he suffered, and not merely a remedy that punishes defendant. Accordingly, it is recommended that plaintiff's request for punitive damages be dismissed without leave to amend, and that his prayer for relief be construed as seeking compensatory damages to the extent permitted by law. No amendment of the complaint is necessary to accomplish this end.

C. Sufficiency of ADA and RA claims

To state a claim under Title II of the ADA, the plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)). The elements of a claim under the Rehabilitation Act are essentially the same. See Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).

Defendant contends that the complaint fails to state a claim because SHRA's denial of plaintiff's request for accommodation constitutes neither exclusion from the voucher program nor denial of its benefits. Defendant's overarching argument here is the same as that forwarded, and

rejected, in the standing context: that plaintiff's claim is hypothetical because he does not allege that he ever had a lease with SHRA. ECF No. 13-1 at 5. Defendant describes the rejected request for an additional bedroom as involving "a hypothetical accommodation," and argues that plaintiff has failed to state a claim because he "does not allege he receives any subsidy, has ever received a subsidy, or that he would receive a greater subsidy or be afforded the ability to obtain a larger apartment only if the accommodation were granted." Id. at 6.[4] The requested accommodation is no more hypothetical than the injury caused by its denial. Moreover, the pro se complaint supports an inference that plaintiff cannot obtain a larger apartment without a subsidy calculated to provide for a two-bedroom unit.

Defendant argues further that plaintiff has not adequately alleged he was excluded from participation in or denied the benefits of the Housing Choice Voucher program. Id. The complaint does specifically allege both exclusion of participation and denial of benefits, ECF No. 1 at 5-6, and plaintiff has pled supporting facts: he alleges that he was denied a voucher adequate to subsidize a two-bedroom unit, even though he needs a bedroom separate from his wife to accommodate his use of medical equipment. Being denied access to housing that meets plaintiff's needs as a disabled person can easily be construed as a denial of the Section 8 benefits to which plaintiff is entitled. Regardless of whether this denial of accommodation is best characterized as exclusion from participation, denial of benefits, or other discrimination (see McGary, 386 F.3d at 1265), it clearly states a claim for relief under the ADA and RA. See Huynh, 2016 U.S. Dist. LEXIS 63678, *36-39, 47-48 (finding that blanket denial of expanded vouchers to provide additional bedroom as a disability accommodation violates ADA, RA, and similar state statutes, all of which establish essentially identical standards for liability).

////

---

[4] As the court explained in relation to standing, it is irrelevant that plaintiff does not currently receive a subsidy in the form of rental assistant paid directly to a landlord under a lease negotiated with SHRA. He has been issued a voucher by SHRA that reflects his eligibility for such a subsidy. The structure of the Section 8 program and its governing regulations, which have been set forth above, establish as a matter of law that the requested accommodation would result in a larger subsidy meant to enable rental of a larger unit. The pro se plaintiff's failure to spell out the technicalities is not grounds for dismissal.

Defendant acknowledges that Huynh involved claims similar to plaintiff's, but attempts to distinguish it on the grounds that the Huynh plaintiffs had existing Section 8 leases. See ECF No. 13-1 at 7. What mattered in Huynh was not that the plaintiffs were already in subsidized housing, but that they had been denied expanded vouchers which would provide for an additional bedroom as a disability accommodation. While the named plaintiffs in that case did have existing leases, 2016 U.S. Dist. LEXIS 63678 at *7-15 (allegations regarding named plaintiffs), the certified class included all Section 8 *voucher holders* who sought and were denied additional bedrooms, id. at 16-17. Huynh thus supports the undersigned's conclusion that voucher holders as well as tenants are Section 8 program participants who may bring a claim of disability discrimination based on the denial of accommodations.

### IV. Pro Se Plaintiff's Summary

It is being recommended that your request for punitive damages be dismissed because that type of relief is not available under the ADA and RA, but that your case continue and that you be allowed to seek compensatory damages. The magistrate judge finds that you have alleged enough of an injury to proceed with the lawsuit. The district judge will make the final decision on this recommendation. You can object to any part of it that you disagree with by filing written objections within 21 days.

### V. Conclusion

Accordingly, the undersigned recommends that the motion to dismiss (ECF No. 13) be GRANTED to the limited extent that plaintiff's request for punitive damages is dismissed and the complaint's prayer for relief construed as seeking damages that are compensatory only, and be OTHERWISE DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to

appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 8, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE