UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY BURTON,<br><br>                  Plaintiff,<br><br>         v.<br><br>SHRA,<br><br>                  Defendant. | No.  2:23-cv-03034 DAD AC PS<br><br>ORDER and FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff proceeds in this action pro se, and pre-trial proceedings are accordingly referred to the undersigned by Local Rule 302(c)(21).  Before the court is defendant's motion for summary judgment (ECF No. 50), which plaintiff opposes (ECF Nos. 53, 60, 63).  Defendant has filed a reply.  ECF No. 65.  Also before the court is defendant's motion to strike plaintiff's deposition errata (ECF No. 51), which plaintiff opposed (ECF No. 44), and to which defendant submitted a reply (ECF No. 58).  Finally, plaintiff has moved for sanctions for submission of false statements (ECF No. 61), which defendant opposes (ECF No. 66).

For the reasons set forth below, the undersigned recommends that defendant's motion for summary judgment (ECF No. 50) be GRANTED.  It is further ordered that defendant's motion to strike (ECF No. 51) is GRANTED and plaintiff's motion for sanctions (ECF No. 61) is DENIED.

## I.        Complaint and Relevant Procedural History

Plaintiff initially sued the Sacramento Housing and Redevelopment Agency ("SHRA"),

1

Laila Darby (SHRA director) and Ibra Henley (SHRA Hearing Coordinator), for violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973. ECF No. 1 at 3-4. Defendants Darby and Hensley were dismissed from the case after plaintiff failed to complete service in accordance with Fed. R. Civ. P. 4(m), leaving SHRA the sole defendant. ECF Nos. 32, 35.

Plaintiff and his wife participate in SHRA's Housing Choice Voucher program and are in possession of a voucher for a one-bedroom apartment. Plaintiff alleges that on June 4, 2021, and on April 13, 2022, he requested an extra bedroom to be added to his existing housing voucher because of his sleep apnea and degenerative disc disease, asserting that he needs a separate space for his sleep apnea machine apparatus. ECF No. 1 at 5. Plaintiff alleges he was not afforded the opportunity to participate in SHRA's housing programs and was denied equal access under Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA"). Id., ECF No. 21 at 9-13. Plaintiff asserts further that he was denied a reasonable accommodation for his disability, and that SHRA violated their own auxiliary policy under 24 CFR 5.611(c). Plaintiff alleges he has medical notes provided by two different healthcare providers supporting the need for a second bedroom. Id. Plaintiff asked for $65,000 in punitive damages for mental anguish, loss of sleep, and anxiety. Id. at 6.

Defendant moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6), and on August 9, 2024, the undersigned issued Findings and Recommendations that the motion to dismiss be denied except as to the issue of punitive damages, which are not available under the ADA or RA. ECF No. 21 at 12. The District Judge adopted the Findings and Recommendations, and plaintiff's complaint was construed as seeking compensatory damages only. ECF No. 22. The case proceeded through discovery, which closed on December 3, 2025. ECF No. 33. A pre-trial conference and trial date have not been set.

## II.    Miscellaneous Motions

### A.  Motion to Strike Deposition Errata

On August 27, 2025, defense attorney Jay C. Patterson took plaintiff's deposition in person in Patterson's office. ECF No. 51-1 (Declaration of Jay C. Patterson) at 1. A copy of the

2

transcript of the deposition is attached to the Patterson Declaration at Exhibit A.  ECF No. 51-2.  On or about September 16, 2025, the court reporting service advised plaintiff that the transcript had been prepared and was ready for his review.  ECF No. 51-1 at 2.  Patterson subsequently received a copy of plaintiff's "Errata Sheet" identifying approximately 78 requested changes to the 118-page transcript.  The Errata Sheet is attached as Exhibit C (ECF No. 51-2 at 142-157) to the Patterson declaration, with numbers added by Patterson in red for ease of reference.  ECF No. 51-1 at 2.

Patterson reviewed the Errata Sheet and found that it largely consisted of proposed substantive changes to the record, and categorized the proposed changes into five categories as follows:  (1) changes that are at least reasonably similar to the original testimony in that the substance of the response does not significantly change (changes 1, 2, and 4); (2) changes that modify the substance of plaintiff's spontaneous response in deposition (changes 5-7, 11-14, 19, 21-24, 26, 28, 42, 46-47, 55-59, 64, 69, 90, and 97); (3) corrections that add substantive information to the original answer (3, 8-10, 17-18, 20, 27, 31, 34, 62-63, 67-68, 76, 80, 102, 104, and 105); (4) changes that insert wholly new answers and information, including improper argument (16, 25, 29-30, 32-33, 35-40, 43-45, 48-53, 60-61, 65-66, 70-75, 77-79, 81-89, 91-96, 98-101, 103, 106-108); and (5) changes to Patterson's question asked at the deposition, rather than the answer (change 41).  ECF No. 51-1 at 2-3.  Patterson also identified several changes that were duplicative of one another (changes 13 and 14, 19 and 24, 38 and 43, 39 and 44, 46 and 55, 47 and 56, 48 and 50, 49 and 51, 58 and 59, 60 and 84, 61 and 66, 62 and 67, 63 and 68, 64 and 69, 65 and 70, 71 and 73, 72 and 74, 75 and 79, 76 and 80, 77 and 81, 78 and 82, 82 and 85, 86 and 93, 87 and 94, 88 and 95, 89 and 96, 90 and 97, 91 and 98, 99 and 100, 101 and 103, and 102 and 104.  Id. at 3.  Defendant moves to strike the changes in categories 2-5 as noncompliant with the scope of Federal Rule of Civil Procedure 30(e).

Pursuant to FRCP Rule 30(e), a deponent "must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."  FRCP Rule 30(e)(1).  If a review was requested and

changes were made, the deposition officer "must attach any changes the deponent makes during the 30-day period." FRCP Rule 30(e)(2).  The list of changes made to the deposition transcript is commonly referred to as an "Errata Sheet."  The Ninth Circuit has found that errata sheets are subject to the "sham rule," explaining that "[w]hile the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."  Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005).  The Ninth Circuit has made clear that "Rule 30(e) is to be used for corrective, and not contradictory, changes."  Id. at 1226.  "In determining whether a deposition errata constitutes a sham, courts consider circumstances including [1] the number of corrections, [2] whether the corrections fundamentally change the prior testimony, [3] the impact of the corrections on the cases (including whether they pertain to dispositive issues), [4] the timing of the submission of corrections, and [5] the witness's qualifications to testify."  Karpenski v. Am. Gen. Life Companies, LLC, 999 F. Supp. 2d 1218, 1224 (W.D. Wash. 2014). "Even where a court finds that errata are not shams, the court may still strike portions that constitute contradictory rather than corrective changes."  Id.

Here, the court agrees with defendant that the errata sheet should be stricken in part, as to the changes identified above in categories 2-5, because all factors except for the timing of the errata submission weigh in favor of striking.  First, plaintiff submitted over 95 corrections, a number far greater than those found excessive in other cases.  See, e.g.,  Karpenski, 999 F. Supp. 2d at 1225 (finding 29, 45 and 16 changes to be substantial as to three separate depositions). Second, many of the proposed changes are substantive.  For example, at correction number 6 plaintiff changed the response "Yeah, thereabouts" to "I can't remember."  ECF No. 52-2 at 142. Third, the substantive proposed corrections go to the central issues of this case.  For example, correction 35 changes "I never requested specifically only to use the extra bedroom for my sleep apnea machine 'exclusively'" to "I never requested a extra bedroom only because of my CPAP machine equipment what I stated was I requested a extra bedroom because of my sleep apnea and degenerate disc disease and to have a place for my CPAP machine equipment.  I never requested

a reasonable accommodation just based on my sleep apnea by itself please see attached health disclosure information forms I have been consistent additionally, my health care providers have also stated why I needed the accommodations." ECF No. 5-2 at 147. As to the fifth factor, plaintiff was fully qualified to testify as to his own knowledge regarding his own claims.

The only factor that weighs against striking the improper changes is the fourth (timing), because plaintiff submitted the errata sheet before defendant filed its motion for summary judgment. Plaintiff argues that the changes made in defendant's identified categories 2-5 should not be stricken because he "only tried to fix incorrect words recorded by the court reporter for clarification of my answers due to having misspelling and misspoken and misunderstood the question my changing my 'yes' to a 'No' was I believe a justifiable reason I also changed my deposition errata sheet because [I] remembered a fact differently." ECF No. 55 at 2. This is not persuasive because of the nature of depositions: "depositions are different from interrogatories as they are not a 'take home examination.'" ViaSat, Inc. v. Acacia Commc'ns, Inc., No. 16CV463 BEN (JMA), 2018 WL 899250, at *4 (S.D. Cal. Feb. 15, 2018). Errata sheets are simply not intended to serve as an opportunity to alter testimony upon further consideration by the deponent. The court agrees that the errata sheet changes identified by the defendant in categories 2-5, discussed above, are out of compliance with the Federal Rules.

Because it is legally and factually supported, the motion to strike (ECF No. 51) is GRANTED. In the interest of clarity and finality, however, the undersigned notes that whether the motion to strike were granted or denied, the recommendation on summary judgment explained below would be unchanged because even entirely excluding plaintiff's deposition, the evidence is sufficient to warrant summary judgment in defendant's favor.

B. Motion for Sanctions

Plaintiff asks the court to sanction the defendant, asserting that defense counsel Patterson submitted as an exhibit an altered version of a Licensed Professional Certification of Need from his healthcare provider Behang Mai-Woods, PA. ECF No. 61 at 2. Plaintiff contends the exhibit was altered because the original certification is signed, but defendant submitted an unsigned version, and plaintiff contends this proves alterations were made. Id. Defendant responded,

5

noting that plaintiff's motion for sanctions is untimely and procedurally defective, and explaining that no documents have been altered, but that there are different versions of various forms. ECF No. 66 at 1-5. Further, defendant submitted a declaration from Patterson explaining that the document plaintiff takes issue with as "fraudulent," but which defendant contends is an entirely separate Certification document that exists in addition to the signed Certification, was never even submitted to the court. ECF No. 66-1. Plaintiff did not submit a reply. The court has reviewed the documents and finds no evidence of document alteration or any other wrongdoing. Accordingly, the motion for sanctions (ECF No. 61) is DENIED.

### III.    Legal Standard for Summary Judgment

Defendant moves for summary judgment on all claims. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

U.S. at 289).

## IV.    Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.  Defendant's statement of undisputed facts is located at ECF No. 50-2 and is supported by the declaration of defense counsel and associated exhibits (ECF Nos. 50-3, 50-4).  Plaintiff's statement of undisputed facts is located at ECF No. 63, and plaintiff attached various exhibits to his opposition at ECF No. 53.  Defendant replied to plaintiff's statement of undisputed facts.  ECF No. 65-1.

On or about June 14, 2021, plaintiff submitted a written request for a second bedroom to be added to his existing one-bedroom housing choice voucher "because of my chronic sleep apnea which is a sleep disorder."  Patterson Decl. at Ex. 1 (June 4, 2021 Authorization for Use or Disclosure of Health information, together with Behang Mai-Woods' February 12, 2020 Licensed Physician or Attending Health Care Professional's Certification of Need for Reasonable Accommodation); Ex. 26 (Plaintiff's Deposition Transcript) at 18:1-6, 27:15-24, 28:11-29:7.  The request was accompanied by a Licensed Physician or Attending Health Care Professional's Certification of Need for Reasonable Accommodation ("Certification") signed by Behang Mai-Woods, PA-C dated February 12, 2020.  Patterson Decl., at Ex. 1 (Certification dated February 12, 2020).

The Certification indicated as follows: "The Applicant needs the following modification to accommodate his/her disability: Extra room for sleep apnea equipment."  Patterson Decl. at Ex. 1 at 3.  Part III of the Certification contains a required "check the box" question, asking the provider to identify whether the requested modification would "improve quality of life OR" whether the accommodation is medically necessary.  Id. at 4.  Mai-Woods checked the box indicating that the accommodation would improve quality of life; she did not check the box indicating that the accommodation was medically necessary.  Id.  The follow-up to the "check the box" question asked for an explanation of how the requested accommodation provides the patient with equal opportunity and access to housing; this portion was left blank by Mai-Woods.

Patterson Decl. at Ex. 1, page 4; Ex. 26, at 36:20-37:4.

SHRA reached out to Mai-Woods on July 21, 2021, requesting as follows: "Please provide nexus/connection between disability and requested accommodation. If response is not received, request will be voided in 21 days." Patterson Decl. at Ex. 2 (fax cover sheet dated July 21, 2021). Hearing no response, SHRA reached out to Mai-Woods again on September 1, 2021, requesting as follows: "Please explain the connection between disability related need and request accommodation. What is the nexus?" Patterson Decl. at Ex. 3 (fax communication dated September 1, 2021); Ex. 11 (SHRA fax to Mai-Woods dated November 19, 2021).

On October 11, 2021, SHRA advised plaintiff that it had not received sufficient supporting documentation to support the request and therefore was voiding the request. Patterson Decl. at Ex. 5 (correspondence from Ibra Henley to plaintiff dated October 11, 2021); Ex. 8 (correspondence from Tyler Thao to plaintiff referring to the void letter and Behang Mai-Woods' Certifications). On November 9, 2021, Housing Assistant Tyler Thao wrote to plaintiff requesting a call to discuss how to resubmit his request for a second bedroom. Ex. 6 (November 9, 2021 letter from Thao to plaintiff); Ex. 7 (plaintiff's November 10, 2021 email to O'Daniel). Also on November 9, 2021, Thao contacted plaintiff and informed him of the October 11 letter indicating that plaintiff's June 4, 2021 request was voided. Ex. 7 (plaintiff's November 10, 2021 letter to O'Daniel); Ex. 8 (Thao correspondence to plaintiff dated November 10, 2021).

On November 10, 2021, Thao again wrote to plaintiff to explain that the Certification from Behang Mai-Woods was incomplete. Patterson Decl. Ex. 8 (Thao to plaintiff November 10). On November 14, 2021, plaintiff wrote to SHRA director Ibra Henley to further describe his medical conditions/disabilities. Patterson Decl. Ex. 9 (plaintiff's November 14, 2021 correspondence to Henley). In this note, plaintiff wrote, "So the answer to your question about the NEXUS/CONNECTION BETWEEN why I need the extra bedroom is because this would allow me to get some rest and sleep without disturbing my wife who I might add suffers from bipolar disorder my constant inability to sleep and my insomnia will exacerbate her sleep, as it does mine if I have my own bedroom I will not disturb her." Id.

On November 15, 2021, plaintiff submitted a new request, stating: "I am requesting a 2

9

two bedroom to be added to our housing voucher because of my medical necessity of my chronic sleep apnea, loud snoring, awakening sporadically, difficulty sleeping, insomnia, cognitive impairment." The request was not accompanied by a completed Certification. Patterson Decl. at Ex. 10 (plaintiff's November 15, 2021 Authorization for Use or Disclosure of Health Information, together with a blank Certification). On November 19, 2021, SHRA staff wrote to Mai-Woods again requesting that Mai-Woods complete pages 3 and 4 of the Certification and specifically requesting that Mai-Woods "Please list nexus/connection between client's disability and request for an additional bedroom for medical equipment. How will having an additional bedroom provide the client with equal opportunity and access to housing?" Patterson Decl. at Ex. 11 (SHRA fax to Mai-Woods dated November 19, 2021). On November 23, 2021, Mai-Woods returned the Certification with the following written in response to Part III: "Patient need extra room for medical equipment to help patient with interrupt sleep which result in multiple benefit including but not limited cardiac and respiratory function." Patterson Decl. at Ex. 12 (Certification page 4, with fax header dated November 23, 2021).

On February 1, 2022, SHRA Program Integrity Analyst employee Marc Ledet wrote to plaintiff to request photographs of the medical equipment and supplies in order to evaluate plaintiff's need for an additional bedroom. Patterson Decl. at Ex. 13 (Ledet February 1, 2022 letter to plaintiff); Ex. 14 (plaintiff's correspondence to Ledet). On or before February 6, 2022, plaintiff sent photos of his CPAP machine to Ledet via certified mail. Ex. 14 (Burton February 6-8, 2022 correspondence to Ledet with photos). At some time between February 6, 2022 and February 17, 2022, Ledet received and reviewed the photos of plaintiff's CPAP machine to evaluate plaintiff's need for an additional bedroom and determined that "[b]ased on the size and quantity of the additional equipment I do not recommend an additional bedroom at this time." Patterson Decl. Ex. 15 (undated Ledet letter).

On February 17, 2022, SHRA Director Laila Darby advised plaintiff that his request was denied on the grounds that the "amount of equipment that you have does not appear to warrant an additional bedroom." Patterson Decl. at Ex. 16 (Darby February 17, 2022 letter to plaintiff); Ex. 17 (plaintiff's February 22, 2022 correspondence to Darby). On February 22, 2022, plaintiff

wrote to Darby in response to SHRA's denial, disagreeing with SHRA's conclusion "because the amount of equipment does not NEGATE the fact that we do qualify under SHRA's ACCOMMODATION POLICY and also under ADA POLICY REGARDING DISABILITY STANDARDS and should not be simply based on the amount of equipment but be based on the FACTS that the disabled person / applicant has provided," and referring to the other reasons he needed a second bedroom, including "by having the two bedroom I would not be disturbing my wife's sleep WHO suffers from BIPOLAR disorder[.]" Id. Plaintiff's letter closed with "THANK YOU FOR YOUR RECONSIDERATION." Id. On March 7, 2022, nurse practitioner Carissa Caryotakis wrote a letter addressed "To Whom it May Concern," stating: "Stanley Burton has been diagnosed with severe sleep apnea and therefore would benefit from 2 bedroom apartment with his wife in order to improve sleeping situation and breathing at night." Patterson Decl. at Ex. 18.

On March 22, 2022, Laila Darby advised plaintiff that his request had been denied, explaining that SHRA has determined that plaintiff's "needs can be met without increasing the voucher size." Patterson Decl. at Ex. 19 (March 22, 2022 Darby letter); Ex. 26 (plaintiff's deposition), at 60:19-61:2; 68:12-69:9. Darby explained that in determining if a reasonable accommodation request such as plaintiff's requires a change, SHRA is guided by "the Housing and Urban Development (HUD) regulations, the Housing Authority's administrative plan and the Housing Choice Voucher (HCV) guide book." Patterson Decl. at Ex. 19 (March 22, 2022 Darby letter). Darby pointed plaintiff to the Code of Federal Regulations at 24 CFR 982.402, which states that in relevant part that "subsidy standards must provide for the smallest number of bedrooms needed to house a family without overcrowding" and that "[o]ne bedroom will be allotted for the head of household and spouse or co-head and one bedroom will be assigned for each additional two persons." Darby noted that the regulations provide that "a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space." Id. Pursuant to these guidelines, Darby recommended that plaintiff make alternative sleeping arrangements within the bounds of his current voucher. Id.

On April 14, 2022, Caryotakis filled out a new Certification, this time stating that

11

plaintiff's request for a second bedroom was "medically necessary" because "Stanley Burton has been diagnosed with severe obstructive sleep apnea and degenerative disc disease and would benefit from 2 bedroom which is necessary to have to support his medical conditions." Patterson Decl. at Ex. 20 (April 13, 2022 Authorization for Use or Disclosure of Health Information together with April 14, 2022 Certification).  That same day, Caryotakis signed a letter addressed "To Whom it May Concern" identifying plaintiff's severe obstructive sleep apnea and degenerative disc disease and stating her belief that it was necessary for plaintiff to have a 2-bedroom apartment."  Patterson Decl. at Ex. 21 (Caryotakis April 14, 2022 correspondence).

On May 3, 2022, Ibra Henley sent notice of a Zoom hearing regarding the denial, to take place on May 17, 2022.  Patterson Decl. at Ex. 22 (Henley May 3, 2022 letter to plaintiff).  On May 8, 2022, plaintiff wrote to Henley to expressly decline the invitation to the hearing, but asking Henley to forward the hearing invitation Caryotakis.  Patterson Decl. at Ex. 23 (Burton May 8, 2022 correspondence).  Specifically, plaintiff took issue with the fact that no evidence was to be presented at the hearing and wrote "thank you for asking me for my input at the hearing but based on SHRA'S HEARING PROCESS I don't believe that you need my presence.  I have given SHRA ALL OF what was requested of me regarding this whole accommodation process and I've been more than cooperative with all of your representatives."  Patterson Decl. at Ex. 23. On May 17, 2022, SHRA held a hearing on plaintiff's accommodation request, and plaintiff did not appear.  Patteson Decl. at Ex. 24 (default decision); Ex. 29 (Request for Admission to Plaintiff, Set One), at No. 24 (6:4-5); Ex. 30 (Plaintiff's Response to Requests for Admission at No. 24 (9:2-5).  Due to plaintiff's failure to appear at the May 17, 2022 hearing, SHRA affirmed its denial of plaintiff's request for a reasonable accommodation.  Id.

## V.    Analysis

Defendant moves for summary judgment on plaintiff's claim under the Americans with Disabilities Act ("ADA") and §504 of the Rehabilitation Act (§504).  A plaintiff alleging a violation of Title II of the ADA "must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and

12

(3) *such exclusion, denial of benefits, or discrimination was by reason of his disability*." Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997) (italics original).  "A claim under Section 504 is composed of identical elements and applies to any public program that receives federal financial assistance." C.B. v. Moreno Valley Unified Sch. Dist., 732 F. Supp. 3d 1139, 1156 (C.D. Cal. 2023), citing Duvall v. County of Kitsap, 260 F.3d at 1135; see also Wong v. Regents of Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999).  "SHRA concedes for the purposes of this motion that plaintiff is an individual with a disability, that SHRA receives federal assistance, and that plaintiff is otherwise qualified to receive the benefits of SHRA's HCV program."  ECF No. 50-1 at 10.  SHRA argues that it is entitled to summary judgment on all claims because plaintiff "has no competent evidence that he was denied any benefits of the program by reason of his disability."  Id.  The court agrees that defendant is entitled to summary judgment on all claims.

A.  Plaintiff Was Not Denied Any Benefit to Which He Was Entitled

SHRA considered plaintiff's request for a second bedroom, which he stated was necessary to accommodate his sleep apnea equipment and/or to improve his sleep, and concluded the requested accommodation was not necessary because alternative sleeping arrangements were possible within his current voucher.  Specifically, plaintiff could (a) could store the equipment in the bedroom or another common room and/or (b) he could sleep in a different room from his wife, such as a common area.  This proposal is consistent with regulations governing housing subsidy standards for Section 8 Tenant-Based Assistance, specifically 24 C.F.R. § 982.402, which requires a public housing agency ("PHA") such as SHRA to "establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions." 24 C.F.R. § 982.402(a)(1).  As Ms. Darby explained to plaintiff in her March 22, 2022 letter, PHA's subsidy standards must "provide for the smallest number of bedrooms needed to house a family without overcrowding," and be applied consistently for all families of like size and composition. 24 C.F.R. § 982.402(b)(2)-(3).  Patterson Decl. at Ex. 19.  It is also consistent with HUD's HCV Guidebook, which provides that "a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space."  Patterson Decl., at Ex. 19.

13

Further, the medical documentation furnished by plaintiff to SHRA did not demonstrate that plaintiff needed a second bedroom to meaningfully participate in the Voucher program.  Mai-Woods' November 23, 2021 Certification stated only that plaintiff needed an extra room for medical equipment "to help patient with interrupt sleep which result in multiple benefit including but not limited cardiac and respiratory benefit."  Patterson Decl., at Ex. 12.  This statement does not explain why an extra bedroom would address plaintiff's interrupted sleep better or differently than plaintiff sleeping in a common area.  Likewise, Caryotakis' March 7, 2022 letter and April 14, 2022 Certifications do not provide a nexus between the specific need for an extra bedroom and plaintiff's medical conditions.  The March 7, 2022 letter says only that plaintiff "has been diagnosed with severe sleep apnea and therefore would benefit from 2 bedroom apartment with his wife in order to improve sleeping situation and breathing at night."  Patterson Decl. at Ex. 18. The April 14, 2022 Certification stated only that plaintiff "has been diagnosed with severe obstructive sleep apnea & degenerative disc disease & would benefit from 2 bedroom which is necessary to have to support his medical conditions."  Ex. 20, at p. 4.  None of these documents establishes that plaintiff requires the accommodation of an extra bedroom to participate meaningfully in the housing voucher program or explains why an additional bedroom is necessary due to plaintiff's disabilities.

The court agrees with SHRA that plaintiff has presented no evidence that his disability requires a second bedroom, and so he was not denied any benefit to which he was entitled.  The court also agrees that to require SHRA to provide a second bedroom under the circumstances presented in plaintiff's case would constitute an undue burden to SHRA, because it would require SHRA to subsidize plaintiff's voucher beyond what is required under the current statutory regime.  Plaintiff has not identified evidence which creates a triable fact regarding his entitlement to a two-bedroom voucher due to his disability or medical needs, and accordingly no jury could find that he was "excluded from participation in or denied the benefits" of SHRA's housing voucher program.

B.  Plaintiff Has Not Shown Any Discriminatory Intent

As a secondary basis for summary judgment in defendant's favor, plaintiff has not shown

14

that SHRA acted with discriminatory intent toward him.  Instead, as discussed in detail above, the evidence clearly shows that SHRA employees considered plaintiff's request for a second bedroom as a reasonable accommodation, investigated the basis for the request, and found that (1) it was not justified by the size of the medical equipment plaintiff alleged he needed space to store, and (2) it was not justified by the danger of disturbing the sleep of plaintiff's wife.  Plaintiff has contended in discovery and in his deposition that Laila Darby's February 17 and March 22, 2022 letters evidence SHRA's discriminatory intent.  Specifically, Plaintiff points to the following language, found in both letters, purportedly demonstrating that SHRA's decision was made by reason of Plaintiff's disability: "Your request for an additional bedroom as a reasonable accommodation for the disabilities of Stanley Burton is hereby denied."  See e.g., Patterson Decl. at Ex. 26 (Deposition of Plaintiff), at 90:1 – 92:4, 94:10-14; 97:14-24; Ex. 29 (Requests for Admission to Plaintiff, Set One at Request No. 13); Ex. 27 (Interrogatories to Plaintiff, Set One at Special Interrogatory Nos. 12, 5:9-12).  Plaintiff's interpretation of this language as evidence of discriminatory intent is not reasonable, based on the plain meaning of the language itself.

Having reviewed all the evidence presented and described in detail above, the undersigned concludes that plaintiff has not put forth any evidence of discriminatory intent and accordingly cannot succeed on either of his claims.

### VI.    Conclusion

It is hereby ORDERED that defendant's motion to strike (ECF No. 51) is GRANTED and that plaintiff's motion for sanctions (ECF No. 61) is DENIED.

Further, for the reasons explained above, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 50) be GRANTED and that judgment be entered in favor of defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: May 29, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

16